UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 7 |
| | : | |
| DORSEY LEON HAMMOND, | : | CASE NO. 22-54243 - JWC |
| | : | |
| _____DEBTOR._____ | : | |
| | : | |
| MARY IDA TOWSON, | : | |
| UNITED STATES TRUSTEE, | : | |
| | : | |
| MOVANT, | : | |
| | : | |
| -vs- | : | CONTESTED MATTER |
| | : | |
| DORSEY LEON HAMMOND, | : | |
| | : | |
| RESPONDENT. | : | |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO APPROVE POST-PETITION RETAINER AND MOTION TO DISQUALIFY ROUNTREE LEITMAN KLEIN & GEER, LLC**

Mary Ida Towson, United States Trustee for Region 21, (the "United States Trustee"), through undersigned counsel, respectfully moves this Court to enter an order denying Debtor's request to pay a post-petition retainer and disqualifying Rountree Leitman Klein & Geer ("RLKG") from representing Dorsey Leon Hammond, the debtor in the underlying bankruptcy case. In support of this pleading, the United States Trustee states as follows:

**I.    COURSE OF PROCEEDINGS AND STATEMENT OF FACTS**

1. On June 3, 2022, Dorsey Leon Hammond ("Mr. Hammond") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code.

2. Mr. Hammond continues to manage his assets as debtor-in-possession because no trustee has been appointed in his case.

3. RLKG has represented Mr. Hammond since Mr. Hammond filed his chapter 11 bankruptcy case.

4. On July 7, 2022, Mr. Hammond filed an application to retain RLKG as counsel in his bankruptcy case (the "Employment Application") (Doc. No. 17).

5. In the Employment Application, Mr. Hammond stated,

> [p]rior to filing of Debtor's bankruptcy petition, Applicant received a retainer of $10,000.00, which was gifted to Debtor from his ex-son-in-law. The Debtor's ex-son-in-law gifted another $5,000.00 on July 1, 2022, to supplement the retainer . . . .

Employment Application, ¶ 11.

6. Neither the Employment Application nor the Declaration of William A. Rountree ("Attorney Rountree") attached to the Employment Application identifies Mr. Hammond's ex-son-in-law by name.

7. On July 29, 2022, Attorney Rountree amended his declaration in support of the Employment Application. The amended declaration does not identify Mr. Hammond's ex-son-in-law by name.

8. The chapter 11 Section 341 meeting of creditors (the "Meeting of Creditors") was held and concluded July 7, 2022.

9. At the Meeting of Creditors, Mr. Hammond testified that he believed he may have claims against Curtis Dexter Hull ("Mr. Hull"), entities owned or controlled by Mr. Hull, and potentially other individuals, as a result of certain transactions entered into by Mr. Hull or on behalf of Flourish Home Investors, LLC.

10. At the Meeting of Creditors, the United States Trustee requested Mr. Hammond amend Schedule A/B to disclose the potential claims against third parties.

11. On September 7, 2022, Mr. Hammond amended his Schedule A/B to disclose, in response to item 33, "[p]otential claims related to the real estate transactions for the properties in Augusta, Georgia that are the subject of the pre-petition litigation against the Debtor brought by DLP Lending Fund, LLC and Groundfloor Holdings GA, LLC."

**230 Goshen Investment Group, LLC**

12. On March 4, 2019, 230 Goshen Investment Group, LLC ("Goshen") filed a voluntary petition for relief under Chapter 11 of Title 11, United States Code, Case No. 19-53479-sms.

13. Mr. Hull signed Goshen's bankruptcy petition as President of Goshen.

14. Attorney Will Geer ("Attorney Geer"), then a partner at Wiggam & Geer, LLC, and now a partner at RLKG, represented Goshen when it filed its bankruptcy case.

15. According to Attorney Geer's Disclosure of Compensation, he received $21,747.00 as a retainer for provision of legal services to Goshen (Case No. 19-53479, Doc. No. 17, pg. 34).

16. In its schedules, Goshen disclosed that it owned 24 parcels of real property on E. Barcelona Way in Augusta, GA (the "Barcelona Way Properties") (Case No. 19-53479, Doc. No. 17, pg. 11). The Barcelona Way Properties were townhomes in the Goshen Village Development (Case No. 19-53479, Doc. No. 21).

17. Goshen acquired the Barcelona Way Properties in October 2017 using funds borrowed from CAF Bridge Borrower MS, LLC ("CAF") (Case No. 19-53479, Doc. No. 126).

18. CAF's security deeds on the Barcelona Way Properties were not recorded until January 25, 2018.

- 3 -

19. Throughout January 2018, and prior to the recording of CAF's security deed, Goshen transferred the Barcelona Way Properties to Flourish Home Investors, LLC ("Flourish") for no consideration.

20. After transferring the Barcelona Way Properties to Flourish, Mr. Hull caused Flourish to obtain financing from Lima One Capital, LLC, Groundfloor Holdings GA, LLC, Lending Home Funding Corporation, and United Bridge Capital, LP (Case No. 19-53479, Doc. No. 126).

21. All of the security deeds from Flourish were executed prior to the recording of CAF's security deed.

22. The Court converted Goshen's bankruptcy case to chapter 7 on the United States Trustee's motion on April 26, 2019.

23. Also on April 26, 2019, the United States Trustee appointed Neil C. Gordon as chapter 7 trustee in Goshen's case ("Trustee Gordon").

24. During the chapter 11 case and the chapter 7 case, Mr. Hull collected rent from the tenants of the Barcelona Way Properties and initially failed to turn the collected rents over to Trustee Gordon.

25. Ultimately, Trustee Gordon was able to recover $87,459.44 for benefit of Goshen's creditors (Case No. 19-53479, Doc. No. 128)

26. Upon information and belief, Trustee Gordon was unable to sell the Barcelona Way Properties for benefit of the estate due to the lack of equity in the Barcelona Way Properties due to Mr. Hull's actions in causing the Barcelona Way Properties to be offered as collateral for multiple loans.

**Flourish Home Investors, LLC**

27. According to records of the Georgia Secretary of State, Mr. Hammond organized Flourish Home Investors, LLC, on September 13, 2017.

28. At the time Mr. Hammond formed Flourish, his wife, Harriette Hammond ("Mrs. Hammond"), was listed as Flourish's registered agent.

29. Mrs. Hammond continued as Flourish's registered agent until she resigned that role on October 6, 2019.

30. Flourish was administratively dissolved by the Secretary of State on October 22, 2020.

31. Mr. Hammond was at all times the sole member of Flourish.

32. Since its creation, Flourish has filed three bankruptcy cases, including one filed during the pendency of Mr. Hammond's bankruptcy case.

33. On September 6, 2022, Flourish filed a voluntary, *pro se*, petition under chapter 11 of the Bankruptcy Code, Case No. 22-57068-wlh.[1]

34. Each of Flourish's bankruptcy petitions was signed by Mr. Hull as the authorized representative of Flourish.

35. Mr. Hammond's Statement of Financial Affairs (Doc. No. 16) indicates Flourish and Mr. Hull (along with several others) were co-defendants in a lawsuit filed by Groundfloor Holdings GA, LLC in 2019.

---

[1] Flourish was also the debtor in chapter 7 bankruptcy case 19-65317-jwc, filed on September 27, 2019 and chapter 11 bankruptcy case 20-71357-jwc, filed on November 3, 2020.

- 5 -

**Payments by Mr. Hull**

36. Mr. Hull has made a total of $20,000.00 in payments to RLKG, including the initial pre-petition retainer of $10,000.00.

37. While these payments have been characterized as gifts to Mr. Hammond, the record does not support this characterization. For example, Mr. Hammond failed to report receipts of these "gifts" on his monthly operating reports, and Mr. Hammond failed to report the payments to RLKG in his monthly operating reports.

38. Additionally, RLKG failed to adequately disclose the source of the post-petition payments until RLKG filed its first application for compensation. Each amended 2016 Statement indicates the source of additional compensation was "GIFTS FROM EX-SON-IN-LAW AND DAUGHTER" despite Mr. Hammond's daughter making only one alleged gift to Mr. Hammond in the amount of $1,218.12.

39. Furthermore, neither the Employment Application, the amended declaration in support of the Employment Application, nor the amended 2016 statements identify Mr. Hammond's ex-son-in-law by name.

40. Upon information and belief, Mr. Hull made payments directly to RLKG.

**Post-Petition Litigation**

41. On March 7, 2023, DLP Lending Fund, LLC filed a *Complaint to Determine Whether Debtor is Entitled to a Discharge and Dischargeability of Debts* (Doc. No. 86) (the "Complaint").

42. The Complaint is based, in part, on allegations regarding the conduct of Flourish, Goshen, and Mr. Hull, though Mr. Hull is not expressly named in the Complaint.

43. On September 14, 2022, the Court approved the sale of Mr. Hammond's residence (Doc. No. 47).

44. On March 3, 2023, DLP Lending Fund, LLC and Groundfloor Holdings GA, LLC filed a *Joint Expedited Motion to Approve Compromise Agreement* (Doc. No. 85), in which the parties agreed to the allocation of the proceeds from the sale of Mr. Hammond's residence.

**Request for Post-Petition Retainer**

45. On February 3, 2023, RLKG filed an *Application for Interim Compensation by Counsel for Debtor* (Doc. No. 78) (the "Compensation Application").

46. In the Compensation Application, RLKG seeks interim approval of $30,300.50 of attorneys fees and $2,780.39 of expenses.

47. In addition, in the Compensation Application, RLKG seeks permission to apply $19,347.62 in funds they presently have on hand, which includes the payments from Mr. Hull, toward RLKG's fees and expenses.

48. On February 24, 2023, the United States Trustee filed an objection to the Compensation Application arguing that RLKG should not be permitted to apply the post-petition retainer funds to its fees and expenses unless and until the Court approved the payment of the post-petition retainers.

49. In response to the United States Trustee's objection, on March 17, 2023, Mr. Hammond filed a *Motion to Approve Post-Petition Retainer* (Doc. No. 88) (the "Motion").

50. In the Motion, Mr. Hammond argues that his case satisfies the five-factor test set out in *In re Truong*, 259 B.R. 264 (Bankr. D.N.J. 2011) for payment of a post-petition retainer.

- 7 -

51. The Motion does not address the appropriateness of the source of the payment of the post-petition retainer.

## II. ARGUMENT

### A. Payment of a Post-Petition Retainer

52. While the Motion correctly identifies a set of factors for the court to consider when determining whether it's appropriate to approve the payment of a post-petition retainer, Mr. Hammond's case is easily distinguishable from *Truong*.

53. In *Truong*, the debtors initially filed their case, *pro se*, under chapter 13 and subsequently converted their case to chapter 11. Upon conversion of the case to chapter 11, the bankruptcy court directed the debtors to retain counsel. The debtors then filed an application to retain counsel and to approve the debtors paying their chosen counsel a $15,000.00 post-petition retainer. The retainer was funded through a $5,000.00 withdrawal from the debtors' personal checking account and $10,000.00 drawn on the cash value of the debtors' whole life insurance policy.

54. Ultimately, the court in *Truong* held, "the bottom line consideration should be whether the terms of retention are fair; both to the professional whose retention is sought, as well as to the *debtor and its creditors who must bear the expense*." *In re Truong*, 259 B.R. at 267 (emphasis added).

55. The presumption behind the analysis in *Truong* is that the debtor will be the person or entity funding the post-petition retainer.

- 8 -

56. Where, as here, the debtor is proposing to fund the post-petition retainer with funds obtained from a third party, the debtor should also be required to demonstrate that the third-party payment does not create a conflict of interest for the professional.

57. To that end, Rule 1.8 of the Georgia Rules of Professional Conduct precludes RLKG from accepting payments from Mr. Hull.

58. Rule 1.8 states, in pertinent part,

> RULE 1.8 CONFLICT OF INTEREST: PROHIBITED TRANSACTIONS
>
> . . .
>
> (f) A lawyer shall not accept compensation for representing a client from one other than the client unless:
> (1) the client gives informed consent;
> (2) there is no interference with the lawyer's independence of professional judgment or with the client-lawyer relationship; and
> (3) information relating to representation of a client is protected as required by Rule 1.6. . . .
>
> The maximum penalty for a violation of Rule 1.8(a) and 1.8(c)-(j) is a public reprimand.

59. RLKG's acceptance of payments from Mr. Hull interferes with the lawyer-client relationship between RLKG and Mr. Hammond because a vigorous defense of Mr. Hammond in this bankruptcy case will likely require RLKG to assert claims against Mr. Hull and entities that he owns or controls. As a result, accepting payments from Mr. Hull in exchange for RLKG's representation of Mr. Hammond violates Rule 1.8 of the Georgia Rules of Professional Conduct.

### B. Disqualification of Counsel

60. "A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *Kitchen v. Aristech Chem.*, 769 F.Supp. 254, 256 (S.D. Ohio 1991) (citing *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742 (5th Cir. 1980)).

61. Parties "not only have a right, but a duty to bring [ethical] matter[s] to the Court's attention." *Bartech Industries, Inc. v. International Baking Co., Inc.*, 910 F.Supp. 388, 392 (E.D. Tenn. 1996) (citing *Melamed v. ITT Continental Baking Co.,* 592 F.2d 290, 294 (6th Cir. 1979) (overruled on other grounds); *Kitchen,* 769 F.Supp. at 257)).

62. "Motions to disqualify counsel in a lawsuit are very sensitive and require the Court to exercise its judgment with an eye toward upholding the highest ethical standards of the profession, protecting the interest of the litigants in being represented by the attorneys of their choosing, protecting the loyalty and confidences a prior client may have placed in a law firm or an attorney, and the overriding societal interests in the integrity of the judicial process." *Bartech Indus.*, 910 F.Supp. at 392 (citing *Manning v. Waring, Cox, James, Sklar and Allen,* 849 F.2d 222, 224 (6th Cir. 1988); *General Mill Supply Co. v. SCA Services, Inc.,* 697 F.2d 704, 711 (6th Cir. 1982); *Penn Mut. Life Ins. v. Cleveland Mall Associates,* 841 F.Supp. 815, 819 (E.D. Tenn. 1993); *Kitchen,* 769 F.Supp. at 257; *Baker v. BP America, Inc.,* 768 F.Supp. 208, 213 (N.D. Ohio 1991)).

63. Additionally, "[a]s stated by the Fifth Circuit in *In re American Airlines, Inc.,* 972 F.2d 605, 610-12 (5th Cir. 1992), federal courts have a duty and responsibility to supervise the conduct of attorneys who appear before them and to take measures against unethical conduct occurring before them." *Id.* (citing *Kitchen,* 769 F.Supp. at 257).

64. Although parties are presumptively entitled to the counsel of their choice, that right may be taken away for compelling reasons. *In re Cabe & Cato, Inc.*, 524 B.R. 870, 877 (Bankr. N.D. Ga. 2014). The right to choose counsel "must be balanced against the need to maintain the highest standards of the profession". *Id.* (quoting *Hermann v. GutterGuard, Inc.*, 199 Fed. App'x 745, 752 (11th Cir. 2006)).

- 10 -

65. An attorney has two main ethical duties, the duty of confidentiality, which fosters full and open communication between the attorney and the client, and the duty of undivided loyalty, which protects the client and preserves public trust. *In re Cabe & Cato, Inc.*, 524 B.R. at 877. The Court determining the motion to disqualify must balance these ethical duties against a client's right to choose counsel.

66. The moving party bears the burden of proving grounds for disqualification. *Id.* at 878.

> Attorneys practicing in [the Northern District of Georgia] are bound by the Georgia Rules of Professional Conduct, contained in the Rules and Regulations of the State Bar of Georgia, and judicial decisions interpreting those rules and standard. BLR 9010-3. Attorneys are also bound by federal common law and the American Bar Association Model Rules of Professional Conduct, to the extent that they are not inconsistent with Georgia Rules.

*Id.* (citing *Adkins v. Hosp. Auth. Of Hous. Cnty.*, 2009 WL 3428788, *7 (M.D. Ga. Oct. 20, 2009)).

67. Rules 1.7 and 1.9 of the Georgia Rules of Professional Conduct preclude RLKG from representing Mr. Hammond.

68. Rule 1.7 states,

RULE 1.7 CONFLICT OF INTEREST: GENERAL RULE

(a) A lawyer shall not represent or continue to represent a client if there is a significant risk that the lawyer's own interests or the lawyer's duties to another client, a former client, or a third person will materially and adversely affect the representation of the client, except as permitted in (b).

(b) If client informed consent is permissible a lawyer may represent a client notwithstanding a significant risk of material and adverse effect if each affected client or former client gives informed consent, confirmed in writing, to the representation after:
    (1) consultation with the lawyer, pursuant to Rule 1.0(c);
    (2) having received in writing reasonable and adequate information about the material risks of and reasonable available alternatives to the representation, and

(3) having been given the opportunity to consult with independent counsel.

(c) Client informed consent is not permissible if the representation:
(1) is prohibited by law or these Rules;
(2) includes the assertion of a claim by one client against another client represented by the lawyer in the same or substantially related proceeding; or
(3) involves circumstances rendering it reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients.

. . .

The maximum penalty for a violation of this Rule is disbarment.

69.    Rule 1.9 states,

RULE 1.9 CONFLICT OF INTEREST: FORMER CLIENT

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client:
(1) whose interests are materially adverse to that person; and
(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9 (c), that is material to the matter; unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
(1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
(2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

The maximum penalty for a violation of this rule is disbarment.

70.    This rule requires an attorney to act in the best interests of his client. *In re Cabe & Cato, Inc.*, 524 B.R. at 880. "Loyalty to a client is 'impaired when a lawyer cannot consider,

recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests.'". *Id.* (quoting Ga. Rules of Prof'l Conduct R. 1.7 cmt. 2).

71. Because the transactions between Goshen, Flourish, and Mr. Hull arguably created the need for Mr. Hammond to seek the protection of the bankruptcy court, Attorney Geer's prior representation of Goshen creates a conflict of interest.[2] The effect of this conflict on Mr. Hammond is heightened because Mr. Hull has paid more than 94% of the retainer funds which RLKG has collected in Mr. Hammond's case.

72. For the reasons stated herein, the Court should find that RLKG has a conflict of interest and that RLKG has violated its duty of loyalty to Mr. Hammond. As a result, the Court should disqualify RLKG from representing Mr. Hammond in this bankruptcy case.

---

[2] Pursuant to Rule 1.10 of the Georgia Rules of Professional Conduct, Attorney Geer's conflict is imputed to all attorneys at RLKG. Rule 1.10 states,

RULE 1.10 IMPUTED DISQUALIFICATION: GENERAL RULE

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7: Conflict of Interest: General Rule, 1.8 (c): Conflict of Interest: Prohibited Transactions, 1.9: Former Client or 2.2: Intermediary.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:
  (1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and
  (2) any lawyer remaining in the firm has information protected by Rules 1.6: Confidentiality of Information and 1.9 (c): Conflict of Interest: Former Client that is material to the matter.

(c) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7: Conflict of Interest: General Rule.

The maximum penalty for a violation of this rule is disbarment.

WHEREFORE the United States Trustee requests the Court enter an order (i) denying the request for payment of a post-petition retainer; (ii) disqualifying RLKG from representing Mr. Hammond; and (iii) granting such other relief as the court deems appropriate.

Respectfully submitted this 4th day of April, 2023.

                                      MARY IDA TOWNSON
                                      UNITED STATES TRUSTEE
                                      REGION 21

                                      By:            */s/*
                                      Lindsay P. S. Kolba
                                      Georgia Bar No. 541621
                                      United States Department of Justice
                                      *Office of the United States Trustee*
                                      362 Richard B. Russell Building
                                      75 Ted Turner Drive SW
                                      Atlanta, Georgia  30303
                                      (404) 331-4478
                                      lindsay.p.kolba@usdoj.gov

# CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing *United States Trustee's Objection to Debtor's Motion to Approve Post-Petition Retainer and Motion to Disqualify Rountree Leitman Klein & Geer, LLC* using the Bankruptcy Court's Electronic Case Filing program, which sends a notice of this document and an accompanying link to this document to the following party who has appeared in this case under the Bankruptcy Court's Electronic Case Filing program:

| | |
|---|---|
| Elizabeth Ann Childers | echilders@rlkglaw.com, swenger@rlkglaw.com, csmith@rlkglaw.com, 6717577420@filings.docketbird.com, 2836@notices.nextchapterbk.com, willgeer@ecf.courtdrive.com, emiller@rlkglaw.com |
| Beth E. Rogers | brogers@berlawoffice.com, receptionist@berlawoffice.com, jcarroll@berlawoffice.com |
| William A. Rountree | wrountree@rlkglaw.com, swenger@rlkglaw.com, 6717577420@filings.docketbird.com, R71213@notify.bestcase.com, csmith@rlkglaw.com, 2836@notices.nextchapterbk.com, willgeer@ecf.courtdrive.com, emiller@rlkglaw.com, emillerrlkg@ecf.courtdrive.com |
| Vincent R. Russo | vrusso@robbinsfirm.com |

I further certify that on this day, I caused a copy of this document to be served via United States First Class Mail, with adequate postage prepaid on the following parties at the address shown for each.

Dorsey Leon Hammond
2251 Verna Dr.
Decatur, GA 30034-2635

/s/
Lindsay P. S. Kolba
Georgia Bar No. 541621
United States Department of Justice
Office of the United States Trustee
362 Richard Russell Building
75 Ted Turner Drive SW
Atlanta, Georgia 30303
(404) 331-4478
lindsay.p.kolba@usdoj.gov

- 15 -